DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 1:05 CR 189 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | <u>Memorandum</u> |
| | ) | |
| Onnaletha Harrell, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

I. Introduction

The defendant has entered a plea of guilty to a single count of aiding and abetting an unarmed bank robbery. The court has received the pre-sentence report. The defendant has filed a sentencing memorandum and seeks a lower sentence than called for by the Advisory Sentencing Guidelines.

II. The Defendant's Conduct

The bank was robbed on January 18, 2005, by the defendant's boy friend and father of her baby born on November 23, 2004. Later in the day, after an initial denial of complicity, the defendant confessed to her involvement in the bank robbery and as summarized in paragraph 12 of the pre-sentence report as follows:

> On January 18, 2005, the interview with Ms. Harrell was continued at the Elyria Police Department. She was once again advised of her rights. During that interview Ms. Harrell admitted to participating in the Dollar Bank robbery on West River Road in Elyria. She advised that she is familiar with the streets of Elyria. Harrell staed that she tok her baby to see Dr. Johnson on Livingston Ave. In Lorain at approximately 1:30 p.m. Franklin caled her on his cell phone and instructed Ms. Harrell to go to the dollar Bank and see how many tellers were working and how many

(1:05 CR 189)

    customers were in the bank. Harrell did go inside and asked for savings account information. After she left the bank, she called Franklin and advised him that there were two tellers working and one customer. Franklin asked her to come and get him at the Shop-Way Food Mart. Franklin told Ms. Harrell to drive back to the bank on West river road. Ms. Harrell admitted that she knew Franklin was going to rob the bank. She denies knowing that Franklin had the gun in his possession. Harrell admitted that she participated in the robbery, and left the area in her vehicle when Franklin ran from the officers at the Shell gas station. Harrell denied having the stolen money or knowing where the money was.

### III. The proposed Advisory Guideline Calculation

| | |
|---|---|
| Base Offense Level | 20 |
| Specific Offense Characteristic | 2 |
| (Funds from a financial institution) | |
| Adjusted Offense Level | 22 |
| Acceptance of Responsibility | -2 |
| Total Offense Level | 20 |
| Criminal History Category | I (Range is 33 to 41 months) |

 (The defendant has no criminal record)

### IV. The Court's Calculation

The Court determined that the defendant's role in the offense was minor and deduction two levels from the Offense Level. At the time of sentencing, the government indicated that the defendant was entitled to a three level reduction for acceptance of responsibilitiy. According, the total Offense Level, as determined by the Court, is 17. Consequently, the advisory sentencing range is 24-30 months.

(1:05 CR 189)

V. The defendant's motion for a downward variation from the sentencing range

The defendant's motion for a downward variation from the sentencing range focuses on a number of facts. First, the aberrational nature of the crime. Secondly, the pressure from her boyfriend and the father of her new-born child to assist in the bank robbery. Third, the absence of a family structure to care for her newly born child during any period of incarceration[1]. Fourth, her age. Fifth, her employment history. Sixth, her waif-like physical bearing.

VI. The Court's findings, considering the provisions of 18 U.S.C. $3553 (a)

1. Nature and circumstances of the offense.

The defendant participated in a bank robbery with two other individuals. Her role was limited to canvassing the bank, prior to the robbery, and driving the getaway vehicle after her boyfriend had robbed the bank, apparently at gunpoint.

2. The history and characteristics of the defendant.

The defendant is slight of stature identified in the presentence report as a mere five feet tall and weighing 105 pounds. She is waif-like in appearance. She is 24, a high school graduate, with no previous record. The defendant is the mother of one child, Ejavien Franklin, born on November 23, 2004. The child's father is the defendant's boyfriend. His name is Eddie Franklin and he is scheduled to be sentenced in a companion case, i.e., Case No. 1:05 CR 169.

The defendant provided the following written statement on June 2, 2005, when interviewed by

---

[1] The defendant's parents, both employed, attended the sentencing hearing and committed to caring for the defendant's son during the incarceration of the defendant. Counsel for the defendant conceded that the argument in the sentencing memorandum suggesting the absence of a family structure to care for the defendant's young son was erroneous.

(1:05 CR 189)

the probation officer preparing the presentence report:

> The reason why I did this crime is because I have very low self esteem. I was so in love with my baby's father that anything and everything he told me to do I did because I did not want him to be made at me or leave me raising his child all by myself. I've been through so much in my life. I just felt like in order to seek love or get any attention from anybody was by doing the wrong things. . Now I see that doing wrong things doesn't get you anything but trouble. I didn't start getting into trouble until I met my baby's father. I was always a good person and a good mother. My son needs me out here with him and not in prison. Please Judge, I know I made a mistake. I was in love and got caught up in a bad situation. I'm sorry. Please don't send me to prison and I'll promise I'll change my life around. Thnaks for your time to read this letter.

The defendant is a graduate of Southview High School in Lorain, Ohio, in the year 2000. She enjoyed a 2.379 grade point average. She attended Lorain Community College for one year and studied child care. The defendant was gainfully employed from May 30, 2001 to January 17, 2005, earning $7.59 per hour as an employee of Horizon Activities Center. She was terminated following her arrest in this case. She previously worked at Marc's Pharmacy in Lorain, Ohio from November, 2000 until February, 2001. She was involuntarily terminated but no explanation from Marc's Pharmacy as to the reason for the termination.

    3. The need for the sentence imposed.

The offense of aiding and abetting bank robbery is serious. Even though the defendant contends that she did not know that her boyfriend would be armed, the potential for injury and/or death in a bank robbery cannot be ignored. In sum, the offense is serious and the sentence should reflect respect for the law and provide just punishment.

    4. Adequate deterrence to criminal conduct and protecting the public from further crimes of the defendant.

(1:05 CR 189)

The defendant's sentencing memorandum urges the Court to consider a very minimal sentence much less than the sentence imposed by the Court. A sentence to a term of imprisonment is deemed necessary by the Court to afford adequate deterrence to criminal conduct of the nature of the crime committed by the defendant.

In the Court's view, the likelihood that the defendant will engage in subsequent criminal conduct is very slight and a term of imprisonment less than the minimum under the Advisory Guidelines Calculation will, as to this particular defendant, provide more than an adequate deterrence to the possibility of further crimes by the defendant.

5. A sentence calculated to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

As previously indicated, the defendant is a high school graduate with an additional educational experience and has demonstrated the ability to obtain and hold a responsible job. While a term of imprisonment may provide additional educational opportunities, this defendant has the obvious ability to obtain and maintain employment to assist her in providing a home for her child, not yet one year old. In the Court's experience, most of the defendants sentenced by the Court to prison have few, if any potential employment skills, and lack the opportunity, upon release from prison, to obtain productive employment.

The lack of employment skills is a predictor of recividism as this Court has observed since the Parole Commission was abolished and the Court has, of necessity, reviewed hundreds of allegations of violations of the conditions of supervised release, once the sentenced defendant has been released from prison. In this Court's view, the defendant's employment opportunities, the lack of a criminal record

(1:05 CR 189)

other than for traffic violations, and her maternal instincts, plus a severing of her relationship with Eddie Franklin, strongly suggests that the defendant will be a productive citizen upon release from imprisonment. A lengthy sentence may very well impede rather than encourage the defendant's return to society and the resumption of her maternal responsibilities.

  6. The kinds of sentence and the sentencing range.

As previously indicated, the Advisory Guideline Calculation calls for a range of 24 months to 30 months. As the Court understands its sentencing responsibilities, under the teachings of <u>Booker</u>, it has the power, subject to appellate review for reasonableness, to fashion a sentence outside the advisory guidelines. In the Court's judgment, this is such a case. Consequently, and in the exercise of its discretion as established by *Booker* the Court sentenced the defendant to a period of 18 months with a period of supervised release of three (3) years, no fine, and a special assessment of $100.00.

  IT IS SO ORDERED.


|  August 3, 2005  |  */s/ David D. Dowd, Jr.*  |
|---|---|
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |